

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed August 25, 2005            **United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
IN RE:                          §
                                §
RAUL DELAROSA and ANGELICA      §   CASE NO. 05-30964-SAF-7
DELAROSA,                       §
                                §
     D E B T O R(S).            §
```

### MEMORANDUM OPINION AND ORDER

The United States Trustee moves to dismiss, pursuant to 11 U.S.C. § 707(b), the Chapter 7 case filed by Raul DeLaRosa and Angelica DeLaRosa, asserting that the granting of relief to these debtors would amount to a substantial abuse of the provisions of Chapter 7. The debtors oppose the motion.

The motion raises a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(J) and 1334. The court conducted an evidentiary hearing on July 27, 2005. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

The DeLaRosas filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 27, 2005. The United States Trustee moved to dismiss the petition on April 25, 2005, contending that the petition amounts to a "substantial abuse" of the provisions of the Code. 11 U.S.C. § 707(b). The DeLaRosas respond that they have not abused the provisions of the Code, but, rather, have legitimate personal reasons for their expenses.

This court has analyzed and explained the standards for determining motions under § 707(b). See In re Logan, No. 02-39177-SAF-7 (Bankr. N.D. Tex. June 19, 2003), at www.txnb.uscourts.gov/opinions/saf/02-39177_20030601.pdf. The court adopts that analysis and refers the parties to the opinion.

The DeLaRosas' debts are primarily consumer debts. The DeLaRosas have the ability to pay their debts. Their original Schedule I, Current Income of Individual Debtors, did not accurately reflect their combined net income. As established at the hearing, their average net monthly income in 2005 has been $6,800. Prior to January 2005, they had been contributing to 401(k) retirement plans. Retirement planning is not necessary for current food, clothing, shelter or other necessities, or maintenance and support. Income deferred for retirement should be available to pay current debts. Beginning in January 2005, the debtors have not been making 401(k) contributions, but rather using that income to pay expenses. Adjusting Schedule I for that

change and further adjusting Schedule I to reflect typical overtime and bonus compensation results in net monthly income of $6,800.

The DeLaRosas original Schedule J, Current Expenditures of Individual Debtors, reflects expenses of $5,799. Without making any adjustments to Schedule J, the DeLaRosas have monthly disposable income of $1,001. The debtors are repaying a $716 monthly retirement loan debt to themselves to the detriment of their creditors. That expense should not be considered for purposes of the § 707(b) analysis.

The United States Trustee contends that the debtors should be withholding $347 per month less for taxes, based on their projected taxable income and 2004 income tax refund. However, because of the cessation of 401(k) contributions in 2005, the court will not make that adjustment. Eliminating the 401(k) loan repayment but otherwise using Schedule J results in monthly disposable income of $1,717.

The record compels adjustments to their Schedule J expenses for purposes of this analysis. The debtors would incur a tax penalty of approximately $183 per month resulting from the non-repayment of the 401(k) loan debt. That must be added as an expense. The debtors have not budgeted for property taxes. The United States Trustee estimates a monthly expense of $220 based on 2004 taxes. That must be added as an expense as well. Schedule J does not reflect any expense for water/sewer, which

-3-

the court sets at $100 per month.

The debtors take pride in sending the first child in their extended families to college. They cite college expenses as a reason to support a Chapter 7 case. The United States Trustee does not oppose a monthly expense for college tuition, which the court sets at $333, based on the projected tuition at the University of Texas at Dallas, where the son attends. The court adds that expense to the monthly budget.

On the other hand, the debtors could not satisfactorily explain several budget expenses. The debtors list phone expenses of $300. Angelica DeLaRosa testified that her husband had maintained six phone lines. She did not establish the necessity for that magnitude of expense. For purposes of this analysis under § 707(b), the court would limit the telephone expense to $150 per month. The debtors list cable services at $175. The debtors did not provide a basis to support that expense. Allowing basic television and internet services would result in expenses of $75 per month.

The debtors incur Select Soccer expenses for two of their sons. Angelica DeLaRosa testified that the sons have soccer skills and talent worthy of the Select Soccer program. Select Soccer advances youth soccer players to higher skill and exposure levels than does typical recreational soccer. But the debtors are incurring expenses of $800 per month for Select Soccer, including related travel and other expenses. Although the Select

Soccer program may enhance the sons' ability to play college-level soccer, the court cannot, under the § 707(b) analysis, impose that entire expense on the debtors' creditors. The court therefore adjusts that expense by $400, recognizing an expense component in the nature of support. These adjustments to Schedule J result in expenses of $5,985.

As this analysis of income and expenses reveals, the debtors would have $1,531 disposable income per month to fund a Chapter 13 plan ($6,800 plus $716 401(k) loan repayment minus adjusted expenses of $5,985). To obtain a discharge under Chapter 13, the debtors would have to commit their disposable income to a plan for thirty-six months. 11 U.S.C. § 1325(b)(1). Over thirty-six months this disposable income would yield $55,116.

The debtors have secured car and home debt. As revealed in Schedule J, they have budgeted for their secured debt. Angelica DeLaRosa testified that they had fallen two payments behind on their mortgage payment and fallen behind on their car loan when they filed their petition. By the time of the hearing, they were current on their mortgage and one car loan payment behind.

The debtors have scheduled approximately $40,300 of priority and general unsecured debt. Chapter 13 attorneys fees would be $2,000. See General Order 2002-03. The Chapter 13 administrative expenses would total $4,230. A Chapter 13 plan of $46,530, with home and car debt paid directly through the debtors' monthly budget, would result in payment of their

-5-

creditors in full.

The debtors' disposable income for thirty-six months exceeds the cost of a one hundred percent Chapter 13 plan, while leaving the debtors with a sufficient cushion to bring their secured debt current and account for other expenses. The debtors' ability to pay their debts weighs for a dismissal.

Having considered the debtors' ability to fund a Chapter 13 plan, the court looks to the other factors outlined in the <u>Logan</u> opinion to evaluate whether, under the totality of the circumstances, dismissal for substantial abuse is appropriate. The debtors both have steady income and good employment history. By the successful completion of a prior Chapter 13 case, the debtors have demonstrated the discipline to complete a Chapter 13 plan. The debtors have incurred credit card debt as a result of an effort to provide opportunities for their children. The court has factored that admirable effort into its analysis of the debtors' ability to fund a Chapter 13 plan for thirty-six months. Despite having filed inaccurate schedules, as of the hearing, the debtors had not filed amended schedules.

Under the totality of the circumstances, the court concludes that the United States Trustee has established the "substantial abuse" of § 707(b). The debtors have an ability to pay their creditors through a Chapter 13 plan and have a stable source of future income. They are eligible to be Chapter 13 debtors. There is not a compelling factor to continue in Chapter 7.

Accordingly, the case will be dismissed unless the debtors file a notice converting the case to a case under Chapter 13 of the Bankruptcy Code within ten days following the entry of this memorandum opinion and order.

Based on the foregoing,

**IT IS ORDERED** that the motion of the United States Trustee to dismiss this case under 11 U.S.C. § 707(b) is **GRANTED,** and the case shall be dismissed unless the debtors file a notice to convert the case to a case under Chapter 13 of the Bankruptcy Code within ten business days following entry of this order.

###END OF ORDER###